[Civ. No. 9350.   Third Dist.   Sept. 12, 1958.]

C. A. BAIRD, Respondent, v. W. B. BARTON, Appellant.

Burton, Lee & Hennessy and Burton & Hennessy for Appellant.

Falk & Falk for Respondent.

SCHOTTKY, J.—In June, 1954, appellant Barton and the Bairds entered into a contract entitled "Contract for Sale of Timber." By the terms of the contract Barton agreed to sell all the merchantable timber on 240 acres of land owned by him for $50,000. The purchasers made a down payment of $10,000. The balance was to be paid for at the rate of $20 per thousand for all peeler logs and $12 per thousand for all saw logs sold by the Bairds. Full payment was to be made in six months with all deferred payments to bear interest. When the entire sum was paid, Barton agreed to convey the land to the Bairds.

The Bairds entered into possession of the property and then started construction of access roads to connect the property with public roads. Four miles of road were constructed of which 3 miles were on United States Forest Service property and 1 mile on the timber property. The construction involved 211 man and tractor hours. The access roads were partially rocked. The Bairds then commenced logging operations. A strike hampered operations in July. Normal operations were conducted from August until October 6th when the Board of Supervisors of Del Norte County closed a suspension bridge across the Smith River to all truck traffic. The closure prevented any egress for logging trucks from the timber land. In December, 1954, a toll road was opened. To use the road required the payment of a toll of $1.50 per thousand feet carried and the posting of a large bond, which the Bairds claimed made it economically impossible to continue operations, so they stopped. During the period the Bairds were able to remove logs from the property Barton received $15,-096.13 for logs sold. In addition, at the time the bridge was closed the Bairds had felled and bucked over one and one-half million feet of fir and redwood at a cost of $5,782.63.

On February 10, 1955, Barton sent the Bairds a document labeled "Notice of Cancellation." Thereafter, on March 23, 1955, Barton entered into a timber contract with one Dean calling for stumpage payments at a certain price. The agreement provided that if and when all the timber had been cut and removed and the total stumpage had amounted to $20,000 or more, Barton would convey the lands to Dean. On July 14, 1955, Barton conveyed the property to Dean and on the

same date Dean transferred the timber to a plywood company for $45,000.

C. A. Baird, the assignee of the Bairds, then brought suit against Barton to recover $10,000 for money due, and $12,-227.72 for the reasonable value of services performed. Barton cross-complained and asked that the court determine that the contract with the Bairds was terminated because of the alleged breach of the Bairds in not making the payments on the contract when due. Upon the trial of the case two questions were submitted to the jury for its special verdicts. The jury was asked to determine the value of the property on July 14, 1955, and March 23, 1955, and to determine whether Baird had ever told Barton he would not or did not intend to pay the balance on the contract. The jury found that the value of the property was $45,000 on both dates and that Baird had never repudiated the contract.

The court made findings which incorporated the findings made by the jury and found further that Barton did not at any time serve written notice upon respondent reestablishing a time limit for forfeiture if full payment was not made therein; that on March 23, 1955, Barton entered into a timber sales contract with Claude W. Dean and Levinna Dean to sell the said land and timber for $20,000 at a time when the land and timber were worth $45,000, and on July 14, 1955, deeded said property to the Deans. The court found further that respondent was entitled to the return of the down payment of $10,000 and was entitled to be reimbursed for monies expended in building roads to and upon the property, and for down timber remaining thereon. The court further found that the reimbursement should be calculated as follows:

> "Contract price for sale of timber by defendant to plaintiff............ $50,000.00
>
> Loss of value on account of logs removed ....................... 15,096.13
>
> Bare remaining value after removal of logs by plaintiff................ $34,903.87
>
> Value of property at time of sale by defendant to Deans as fixed by jury $45,000.00
>
> Less Value (from above) after removal of logs ....................... $34,903.87
>
> Benefit conferred upon property by the felling and bucking of the trees and by the building of roads....... $10,096.13"

Judgment was entered in favor of respondent in the sum

of $20,096.13. Barton was denied any relief on his cross-complaint.

Barton has appealed from the judgment and contends that the material findings of fact are not supported by the evidence adduced at the trial, and that the findings do not support the conclusions of law and judgment entered.

■ Appellant's first contention is that there was no evidence to support the finding that the property was worth $45,000 on March 23, 1955, which was the time the Barton-Dean contract was made. There was evidence that Dean sold the timber on July 14, 1955, for $45,000. This would tend to establish its value as of that date. Sutherland in his work on damages (vol. 2, p. 1214) states: "Where the price or value at the time in question can not be directly proved it may be inferred from circumstances; and among those which may be proved are sales at other times near that date, especially if the property is such as bears a stable, rather than a fluctuating, price." McCormick in his work on damages (§ 46) states: "The value of land may be proved by . . . evidence . . . of the prices paid on sales of similar land in the neighborhood within a reasonable time before or after the time of valuation." We believe that evidence of the value of the timber on July 14, 1955, is some evidence of its value on March 23, 1955, and that we would not be justified in holding that the determination of the court that the fair market value of the property on March 23, 1955, was $45,000 is not supported by the record.

■ Appellant also attacks the finding that he did not at any time serve respondent Baird with notice of default and points to the notice of cancellation of contract served on respondent on February 10, 1955. This was not a notice of default. While the contract called for payments in six months or on December 1, 1954, time was not made of the essence.

■ In a contract for the sale of land where performance is due on a certain date, even if time is of the essence a party who fails to perform is not in default until the other party places him in default by making a tender. The promise to pay and the promise to convey are mutually dependent and conditional. Until one has offered to perform, the other party can not be placed in default. (3 Corbin on Contracts, § 663.)

■ Barton never tendered performance on his own part. When Barton sent his notice advising the Bairds that he had cancelled the contract and ordering them not to remove any

more logs from the land, he repudiated the contract. He also breached the contract by entering into the agreement with the Deans. Once Barton repudiated the contract the Bairds were entitled to maintain an action for restitution. (4 Corbin on Contracts, § 979; *Smith* v. *Jaccard,* 20 Cal.App. 280 [128 P. 1023, 1026]; *Duncanson* v. *Walton,* 111 Cal. 516 [44 P. 174].)

Appellant Barton challenges the finding of the trial court that Baird conferred a benefit on the property in the amount of $10,096.13. The method used by the trial court supports this finding but the figure can be supported another way. There is evidence that the respondent had felled, bucked and peeled 1,577,978 board feet of redwood and fir at a total labor cost of $5,782.63. The testimony shows that a minimum of 211 hours were spent on constructing the access roads and that two caterpillar tractors were used, a D-8 and a D-6. The testimony shows that the reasonable rental value of a D-8 was $14 per hour and a D-6, $10 per hour. These figures were without regard to the cost of rocking the road. The above figures alone amount to over $10,096.13. The trial court, however, did err in its determination of the amount due. While the Bairds were entitled to restitution of the reasonable value of the benefit they conferred upon Barton by their acts of building roads and felling and bucking timber less the value of the use of the land, they were not entitled to profit from their use of the land. The Bairds removed some timber from the land. They paid Barton for the timber at the stumpage rate provided for in the contract. This rate may well have been below the market value of the timber. This should be determined by the court, and any profit made by the Bairds on the timber removed should be deducted from the amount of recovery allowed. (*Wagner* v. *McConnell,* 141 Cal.App.2d 370 [296 P.2d 915].)

The cause is remanded to the trial court for a determination of the profit made by the Bairds on the timber removed by them. In all other respects the judgment is affirmed. Each party shall bear his own costs on appeal.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied October 6, 1958, and appellant's petition for a hearing by the Supreme Court was denied November 5, 1958.